STATE OF NEBRASKA, APPELLEE, V. ROBERT D. STEPHENS, APPELLANT.

466 N.W.2d 781

Filed March 15, 1991.   No. 90-198.

Richard Scott for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Defendant-appellant, Robert D. Stephens, was convicted after a bench trial of first degree sexual assault on his own not quite 1-month-old granddaughter, in violation of Neb. Rev. Stat. § 28-319 (Reissue 1989), and sentenced to imprisonment for a period of not less than 15 nor more than 50 years. Stephens asserts that the trial court erred in (1) admitting certain evidence and (2) imposing an excessive sentence. We affirm.

On the evening of June 19, 1989, the then 53-year-old Stephens was at home with his daughter, her 15-month-old son, and her daughter, the infant victim. At around 9:30 p.m., Stephens, who had been drinking, asked his daughter to go down to a neighborhood shop and get him a newspaper. The daughter had just put the infant to sleep in a baby swing after bathing, feeding, and changing her. While bathing the infant, the daughter washed the infant's vaginal area and noted nothing abnormal about her at that time.

The daughter took her son with her to fetch the paper, leaving the sleeping infant alone with Stephens. At the shop the daughter happened upon a friend she had not seen for some time. After they had chatted for a while, the daughter invited the friend home to see her infant.

When they arrived back at the house after having been gone about 45 minutes to an hour, the infant was not in the swing where she had been left. The daughter and her friend then went into the front room of the house and found Stephens lying on the couch, with the infant at his feet. The infant was wearing one of her 15-month-old brother's diapers, which was inside out and unfastened. Stephens acted surprised at his daughter's return.

When the daughter picked up the infant, who had had her eyes closed, the infant began to scream. The daughter took the infant into another room to change her diaper and noticed that the diaper was bloody. Upon noticing that the infant's vaginal area was puffy, red, and looked sore, the daughter decided to take the infant to the hospital, suspecting at this point that her father had "done something" to the infant. When she confronted her father, Stephens stated that he had not done anything to the infant and that the infant's formula was somehow to blame. Stephens tried to dissuade his daughter from taking the infant to the hospital; at one point he grabbed her wrist with enough force to leave bruises.

The daughter took the infant to a hospital, where she was examined for evidence of sexual assault. The examining physician testified that the infant had a 1-centimeter laceration in the posterior fourchette, approximately 5 millimeters deep, extending from the inside of the innermost portion of the

external genitalia into the skin toward the anus. The physician further testified that there were irregular tears through the hymenal ring. It was the physician's medical opinion that this was not a normal vaginal opening for an infant of this age and that the injury was caused by a blunt instrument, either manmade or natural, such as a finger or a penis. The physician stated that he "thought it was an obvious case of sexual abuse" and that the injuries were fresh, no more than 12 hours old.

At trial, Stephens' 32-year-old stepdaughter testified that Stephens had had sexual contact with her repeatedly over a substantial period of time, starting when she was a child between the ages of 4 and 5. In these contacts, which began in California about a year after Stephens and her mother were married, Stephens would fondle and digitally penetrate his stepdaughter. This conduct usually occurred on a couch after Stephens had been drinking and while the stepdaughter's mother was absent. When the stepdaughter reached about 14 years of age, Stephens began having intercourse with her. The latter practice continued for an unspecified period of time, but at least until the stepdaughter was 15 years old.

Stephens' first assignment of error involves the admission of his stepdaughter's testimony. Neb. Rev. Stat. § 27-404(2) (Reissue 1989) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Contrary to Stephens' assertions, this provision is a rule of inclusion, rather than exclusion; the list of acceptable uses recited in the statute is illustrative and not intended to be exclusive. *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990); *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990); *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

Section 27-404(2) prohibits the use of evidence of other crimes, wrongs, or acts to establish a character trait or proclivity to act in a certain way for the purpose of proving that

the party against whom the evidence is offered acted in conformity with that trait. This use is prohibited because of the risk that a trier of fact may base its decision upon a determination that a party is a bad person, rather than upon the specific facts relevant to the charge or controversy which is the subject of the trial.

The admissibility of evidence of other crimes or wrongful acts is generally within the discretion of the trial court. *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984); *State v. Dandridge*, 209 Neb. 885, 312 N.W.2d 286 (1981). Like all evidence, it is subject to the overriding protection of Neb. Rev. Stat. § 27-403 (Reissue 1989), which provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *State v. Yager, supra*. In reviewing the admission of evidence of other acts under § 27-404(2), the appellate court considers (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *State v. Yager, supra*.

Because Stephens elected a bench trial, there was no jury to instruct, and the fourth factor listed above is irrelevant to our review. Thus, we turn our attention to the remaining three factors.

Was the evidence that Stephens had recurring sexual contact with his stepdaughter relevant to the offense with which he was charged? The relevant portion of § 28-319 reads: "(1) Any person who subjects another person to sexual penetration and . . . (c) the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree."

Sexual penetration is defined as

sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight,

of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes.

Neb. Rev. Stat. § 28-318(6) (Reissue 1989).

In *State v. Keithley, supra*, we stated that sexual crimes have consistently been classified as offenses in which evidence of other similar sexual conduct has been recognized as having independent relevancy and that such evidence may be admissible whether that conduct involved the complaining witness or third parties. Accord, *State v. Craig, supra*; *State v. Baker*, 218 Neb. 207, 352 N.W.2d 894 (1984); *State v. Hitt*, 207 Neb. 746, 301 N.W.2d 96 (1981). As we said in *State v. Craig, supra* at 76, 361 N.W.2d at 212:

[E]vidence of repeated incidents may be especially relevant in proving sexual crimes committed against persons otherwise defenseless due to age—either the very young or the elderly. Without proof by other acts of a defendant, sexual offenses against the defenseless, except in cases of the fortuitous presence of an eyewitness, would likely go unpunished.

While *Craig* involved repeated incidents with the same victim, the proposition is applicable to the present situation as well.

At trial, Stephens attempted to raise the possibility that he did not sexually assault the victim, by questioning his daughter and other witnesses about whether the back door to the home was open or unlocked and by insinuating that the assault might be part of some sort of gang initiation aimed at his daughter or her husband. Stephens also questioned the victim's physician about the possibility that the victim's injury could accidentally have been caused by an inexperienced person such as Stephens changing the victim's diaper or cleaning her.

The evidence of Stephens' prior sexual contacts with a 4- or 5-year-old girl in his care is relevant to negate the inferences Stephens sought to raise. The evidence is relevant to show both the identity of the assailant as being Stephens and the absence of accident or mistake on his part. Both of these are proper purposes for the admission of the evidence. See, § 27-404(2); *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990); *State v.*

*Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985); *State v. Keithley, supra*; *State v. Hitt, supra*.

The final area of inquiry regarding the admission of this evidence is whether the evidence meets the criteria of § 27-403, which provides, as noted earlier, that evidence may be excluded if, among other things, its probative value is outweighed by the danger of its unfair prejudice. Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court. *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987).

Stephens points out that the sexual contacts to which his stepdaughter testified began 27 years before the incident with his granddaughter. It is Stephens' position that these contacts are temporally too remote and untrustworthy to have been admitted. He appears to overlook, however, that they continued for over 10 years.

In *State v. Yager, supra* at 486, 461 N.W.2d at 745, we stated:

The question of whether evidence of other conduct otherwise admissible under the provisions of § 27-402(2) is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence. *State v. Rincker*, 228 Neb. 522, 423 N.W.2d 434 (1988).

Yager was charged with the sexual assault of a child 14 years of age or younger by an actor 19 years old or older, in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1989), which prohibits sexual contact even without penetration between such persons. At trial, testimony was admitted regarding Yager's repeated sexual contacts with two young males other than the victim. These contacts took place over a period of time running from 20 to 6 or 7 years before the trial. This court held that the trial court did not err in admitting that challenged evidence.

Although the evidence at issue in the case before us involves acts more remote in time than those held to have been properly admitted in *Yager*, the acts here have a higher probative value. In *Yager*, one of the witnesses was only 4 years younger than Yager, and, thus, the sexual contacts between the two never fell within the statute under which he was charged. In the case

before us, all of the contacts testified to occurred while Stephens was over 19 years of age and his victim was under 16 years of age, thus falling within the statute under which he was charged. The earlier incidents recounted by Stephens' stepdaughter involved Stephens' fondling and digitally penetrating her when she was a very young child. These acts usually took place on a couch after Stephens had been drinking and had been left alone with the stepdaughter. On the night of the assault on his granddaughter, Stephens was left alone with the victim, he had been drinking, and when his daughter returned, she found Stephens and the victim on the couch. The high degree of similarity between the prior acts when his stepdaughter was between 4 and 5 years old and the circumstances surrounding the charged offense here counterbalances the remoteness of the events, leaving us with a solidly positive probative value.

The next question is whether the probative value of those contacts is substantially outweighed by the possibility of unfair prejudice. As we have stated on more than one occasion, most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party, and so it is only unfair prejudice, that is, the tendency to suggest a decision on an improper basis, which is the concern of § 27-403. *Yager, supra*; *Lincoln Grain v. Coopers & Lybrand,* 216 Neb. 433, 345 N.W.2d 300 (1984). See, also, *State v. Lonnecker, ante* p. 207, 465 N.W.2d 737 (1991).

In a case tried without a jury, it is presumed that in reaching its decision the trial court, as the finder of fact, considered only competent and relevant evidence. *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). A corollary of this rule is the presumption that a trial court, when acting as the fact finder, only considers competent and relevant evidence for a proper purpose.

Not only has Stephens failed to overcome this presumption, but the trial court expressly ruled that it was receiving the challenged evidence "not to prove the character of the defendant or that he acted in conformity therewith, but [on the issues] of motive, opportunity, intent, knowledge, identity or absence of mistake or accident . . . ." The trial court was well

aware of the permissible and impermissible uses of this evidence, and Stephens gives us no reason to doubt that the trial court was true to its word.

However, the evidence relating to the acts of intercourse Stephens had with his stepdaughter after she reached the age of 14 years does not establish sufficient similarity between those contacts and the event in question to have been relevant and therefore should not have been admitted. Nonetheless, the remaining evidence of Stephens' guilt is so overwhelming that the admission of the intercourse evidence was harmless beyond a reasonable doubt, no matter for what reason it may have been relied upon by the trial court. See, *State v. Lonnecker, supra*; *State v. Johnson*, 236 Neb. 831, 464 N.W.2d 167 (1991); *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989).

This leaves us with the question of whether Stephens' sentence was excessive. Violation of § 28-319(1) is a Class II felony, § 28-319(2), punishable by from 1 to 50 years' imprisonment, Neb. Rev. Stat. § 28-105(1) (Reissue 1985). Stephens' sentence falls within the statutory limits. We repeat yet again the eternally recurring rule: A sentence that is within the statutory limits will not be disturbed upon appeal absent an abuse of discretion. *State v. Rios, ante* p. 232, 465 N.W.2d 611 (1991); *State v. Lonnecker, supra*; *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990); *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990); *State v. Nelson*, 235 Neb. 15, 453 N.W.2d 454 (1990); *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990); *State v. Blue Bird*, 232 Neb. 336, 440 N.W.2d 474 (1989); *State v. Kitt*, 232 Neb. 237, 440 N.W.2d 234 (1989). Moreover, as a practical matter, it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Sianouthai*, 225 Neb. 62, 402 N.W.2d 316 (1987); *State v. King*, 196 Neb. 821, 246 N.W.2d 477 (1976).

This was an extremely serious assault upon one of the most defenseless members of society, a newborn baby. Stephens tore his infant granddaughter's vaginal opening; the tear was approximately one-fifth of an inch deep and almost two-fifths of an inch long on an opening which would normally be about one-fifth of an inch in diameter. The victim was hospitalized for 4 or 5 days. To claim, as Stephens does, that this crime was "not

of a violent nature" is to ignore reality; indeed, Stephens' contention reaches a new high in chutzpah. See *State v. Bonaparte*, 222 Neb. 469, 470, 384 N.W.2d 304, 305 (1986) (defining chutzpah as "colossal effrontery" or "brazen gall").

Stephens has a long and varied criminal record, which demonstrates his complete indifference toward the law. The State of California sentenced him to 3 years' probation for molesting his stepdaughter, but he did not modify his behavior and continued his actions unabated. But even ignoring that record, the reprehensible crime before us, without more, establishes that his sentence does not constitute an abuse of discretion.

AFFIRMED.

SHANAHAN, J., dissenting.

Once again, there is treatment of symptoms, not the illness, in this court's misperception and, therefore, misapplication of Neb. Evid. R. 404(2) concerning "other acts" evidence. Moreover, reiteration that "evidence of [a defendant's] other similar sexual conduct [is] recognized as having independent relevancy" has, unquestionably and unfortunately, come to mean that in a prosecution for a sexual crime, a defendant's other sexual conduct has relevancy independent of the Nebraska Evidence Rules.

To its credit, the district court indicated that if Stephens' case had been tried to a jury, evidence of Stephens' "other acts" would have been presented to the court, and admissibility determined, outside the jury's hearing. We have encouraged Nebraska trial courts to use Neb. Evid. R. 104 (preliminary questions of admissibility) to resolve certain admissibility questions outside the jury's hearing. For instance, in *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989), which involved admissibility of a prior conviction offered under Neb. Evid. R. 609 to impeach a defendant's credibility, we encouraged courts to employ a Rule 104 hearing for determination of admissibility questions such as whether more than 10 years had elapsed since the date of the conviction offered or whether the conviction was for a crime which "involved dishonesty or false statement." Neb. Evid. R. 609(1) and (2). In *Olsan*, we recognized that, "as a suggested procedure," a Rule 104 hearing

is not a prerequisite to admissibility of evidence authorized by Neb. Evid. R. 609. Rather, the suggested procedure appears to be a practicable measure which may be an ounce of prevention at the trial level, obviating a pound of appellate cure and a ton of mistrials and retrials on account of improper impeachment from contravention of Neb. Evid. R. 609.

231 Neb. at 231, 436 N.W.2d at 138-39. What we have expressed in *Olsan* regarding a Rule 104 hearing for impeachment evidence through use of a prior conviction applies equally as well to avoid prejudicial error in a jury trial when "other acts" evidence is tendered under Rule 404(2).

At this point, however, I depart from approbation of the district court's procedure, namely, reception of evidence concerning Stephens' prior sexual conduct outside the act charged in the information.

Rule 404(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(2) prohibits evidence offered for the sole purpose of establishing a defendant's propensity to act in a particular manner and thereby supplying a basis for the inference that the defendant committed the crime charged. Thus, Rule 404(2) forbids a prosecutor's introducing evidence of a defendant's uncharged misconduct to support a general inference of bad character which increases the probability that the defendant committed the crime charged.

To approve admissibility of Stephens' "other acts," the majority intones what has become a Rule 404(2) litany, much akin to that traditional troika or inveterate and terrible trilogy "irrelevant, immaterial, and incompetent," when the majority, referring to the trial court's reasons expressed for admissibility of Stephens' prior conduct, invokes the "other purposes" mentioned in Rule 404(2).

Particularly to be deplored is what might be called the

"smorgasbord" approach to analysis of other crimes evidence in which the court simply serves up a long list of permissible uses without any attempt to show how any of them are applicable to the case at hand. . . . What is to be avoided is the mere listing of possible uses in the hope that at least one will seem to the reader to be applicable to the facts of the instant case.

22 C. Wright & K. Graham, Federal Practice and Procedure § 5240 at 479 (1978).

In reference to "identity" under Rule 404(2), other acts may be used

[t]o prove other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.

McCormick on Evidence § 190 at 559-60 (E. Cleary 3d ed. 1984). See, also, *People v. Alcala*, 36 Cal. 3d 604, 632, 685 P.2d 1126, 1141, 205 Cal. Rptr. 775, 790 (1984) (in "identity" cases, the "other acts" and the crime charged must be related by "common marks which, considered singly or in combination, support the strong inference that the current crime bears [the defendant's] signature"); *People v Golochowicz*, 413 Mich. 298, 311, 319 N.W.2d 518, 522 (1982) ("other acts" offered to prove a defendant's identity must include circumstances which forge a link between the "other acts" and the crime charged, that is, a "unique and uncommonly distinctive style employed by the defendant . . . . It will not suffice that the 'like act' be simply another crime of the same general category or even of the same specific character"); *United States v. Foutz*, 540 F.2d 733, 737 (4th Cir. 1976) (the relationship between "other acts" and the crime charged must show "a uniquely ingenious stroke of criminal artistry"); *United States v. Silva*, 580 F.2d 144, 148 (5th Cir. 1978) ("[a] prior or subsequent crime or other incident is not admissible for [showing the accused's identity] merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused");

*United States v. Myers*, 550 F.2d 1036, 1045-46 (5th Cir. 1977) ("other acts" and the crime charged must " 'bear such peculiar, unique, or bizarre similarities as to mark them as the handiwork of the same individual' " (quoting from *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974)).

As some commentators have observed:

> The prosecution should only be permitted to introduce evidence of other crimes under the identity exception where the question of identity is in issue. Sometimes, for example, in sex crimes the victim and the accused are well-known to each other and there is not the slightest possibility of mistaken identity; the real issue in the case is whether the crime took place. To admit evidence of other crimes under the present exception in such a case is simply an evasion of the general rule that evidence of other crimes cannot be used to prove the conduct of the defendant through an inference as to his character.

22 C. Wright & K. Graham, *supra*, § 5246 at 514-15.

In Stephens' case, there was no real issue of identity; hence, the "other acts" evidence was inadmissible for that purpose. Clearly, the evidence was offered to show Stephens' character or propensity pertaining to sexual conduct and, therefore, is a violation of Rule 404(2), an error which necessitates a new trial for Stephens.

The majority refers to a "presumption" that a trial court, in a bench trial or nonjury case, considers only admissible and relevant evidence in resolving a factual dispute or question. That "rule" and its "corollary," however, do not involve a presumption, that is, a fact inferred from another known or proved fact or facts. The "rule" and "corollary" expressed by the majority is actually a principle of appellate procedure which requires that the defendant show that the trial court actually made a factual determination, or otherwise resolved an issue, through use of inadmissible evidence. This procedural principle differs from the rule for an appellate review of a jury trial involving inadmissible evidence: "In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the

State demonstrates that the error was harmless beyond a reasonable doubt." *State v. Cox,* 231 Neb. 495, 504, 437 N.W.2d 134, 140 (1989). Accord *State v. Lonnecker, ante* p. 207, 465 N.W.2d 737 (1991).

There is a reasonable foundation for a healthy skepticism that the trial court disregarded Stephens' previous sexual involvement with his teenage stepdaughter, for that very conduct was the basis of Stephens' California conviction for a sexual offense which the trial court expressly considered in determining the sentence imposed on Stephens. Ironically, a felony conviction based on Stephens' other acts and offered for the purpose of impeachment would have been excluded by the 10-year limitation for admissibility under Rule 609(2).

Stephens' case is not just a continuation of this court's misunderstanding concerning character or propensity evidence prohibited by Rule 404(2), a continuity of the majority's misperception of "other acts" evidence most recently reflected in *State v. Yager,* 236 Neb. 481, 500, 461 N.W.2d 741, 752 (1990) (Shanahan, J., dissenting): "The 'other acts' evidence was inadmissible in Yager's case. Today's decision has done nothing to rein a runaway rule which threatens to trample on a defendant's right to a fair trial." Rather, Stephens' case is still another indication that this court ignores time as a restrictive factor in admissibility of "other acts" evidence, since, irrespective of the time interval between a prior act and evidence of that act offered at trial, "other acts" evidence is admissible "within the discretion of the trial court." On a review of the Nebraska decisions where "remoteness" was raised as an issue for admissibility of "other acts" evidence under Rule 404(2), there appears to be no decision in which this court concluded that a trial court's ruling was an "abuse of discretion" relative to the span of time between a prior act and evidence of the prior act offered in a defendant's trial.

Better the majority should worry about its umfarshten-denish* of Rule 404(2), not Stephens' chutzpah.

As reflected by *Yager* issued 4 months ago, and until today, 20 years was the extreme in the timespan between a defendant's prior act and evidence of that prior act received at trial. Today, however, we have extended temporal acceptability in "other

acts" evidence to 28 years and probably have expanded a trial court's "discretion" into absolute latitude. If the trend continues in this court's construction and application of Rule 404(2) concerning "other acts" evidence, conduct throughout a defendant's lifetime will be admissible and, if reincarnation is a fact, will be admissible from another life.

*Yiddish for "misunderstanding"