STATE OF NEBRASKA, APPELLEE, V. FLOYD MARTIN, APPELLANT.

493 N.W.2d 191

Filed December 24, 1992.    No. S-91-793.

Thomas G. Lieske, of Lieske and Kristensen, for appellant.

Don Stenberg, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant, Floyd Martin, was charged in an amended information with the crime of engaging in sexual intercourse with his minor daughter on December 5, 1989, a violation of Neb. Rev. Stat. § 28-703 (Reissue 1989), and a Class III felony. Following a trial by jury, he was convicted as charged. He has appealed to this court, alleging that the reception into evidence of previous sexual conduct by the defendant with his daughter was error and, further, that the judgment is not sustained by the evidence. We affirm.

On December 9, 1989, the defendant reported to the police that his daughter, the victim, had run away. She was subsequently taken into custody by a Minden police officer. When asked by the officer why she had run away, she replied that her father, the defendant, had sexually assaulted her and that since she had been in the fifth grade, her father had continually offered her $10 in exchange for allowing him to make love to her, which the defendant referred to as "helping him out." The officer also talked to the victim's mother, who responded that she had no knowledge of any of these acts and

had not suspected anything. The officer further testified on cross-examination that the victim did not state that she had had sexual intercourse with her father on December 5.

The victim's brother testified that in the spring of 1989, he had observed his father in the victim's bedroom, touching and rubbing her, and putting his hands underneath her blouse. He also testified that some evening between Thanksgiving and December 5, he had observed his father making love to his sister on her bed. This testimony was objected to by the defense as improper evidence of prior bad acts, but the objection was overruled, as was the motion for a mistrial.

The victim testified that in December 1989 she resided with her family, that she was enrolled as a ninth grade student in the local high school, and that her date of birth was December 27, 1974. On Tuesday, December 5, she did not attend school because she and her family attended a funeral out of town. The victim stated that on the morning of December 5, she awoke to knocking at her bedroom door and her father calling to her in a whisper. She testified that he would not leave and that she finally let him in. After touching and fondling, they had sexual intercourse.

The victim further testified that the first time she recalled having intercourse with her father was at the age of 5, before she was enrolled in school. She estimated that when she was 14 years old, she had intercourse with her father two to three times a week. Furthermore, according to the victim's testimony, her brother had once walked in on her and the defendant, after which she told her mother about this sexual activity. The victim then went to live with her grandmother.

The family was reunited in 1985 and, according to the victim's testimony, about 2 weeks later, her father asked for sex, and they engaged in sexual intercourse. She stated that her father requested sexual intercourse by asking her "to help him," in return for which the victim was paid $10. Her father also did favors for her, such as washing the dishes or taking her to see her boyfriend. She testified that her father was always prepared with the money and a condom.

When the victim was asked why she had not told various counselors and police officers about this sexual activity, she

replied that she was scared because her father had said that if she ever told anyone "it would be us kids taken this time." In testifying to her attempts to talk to her mother about the activity, the victim said that on the day she ran away she told her mother that her father was still bothering her and offering her money and that her mother told her "she couldn't do anything about [it] because it would always be that way."

A pediatrician testified that he had examined the victim in February 1991 for evaluation of possible sexual abuse. He stated that when he took the victim's medical history, she told him that she had been sexually abused by her father since she was approximately 5 to 7 years of age. Her physical examination was also consistent with the sexual activity indicated by her history. The witness expressed the opinion that the victim was a sexually active female with significant sexual trauma.

A deputy sheriff testified for the defense as to his conversation with the victim on December 10, 1989, in which she indicated that her father had fondled her, but that she had not had intercourse with her father since after she was about 5 years old.

The victim's mother testified about the events of December 5, 1989, and said that to the best of her knowledge the victim had not been alone with her father any time that day. The mother also testified that on the day the victim ran away, she was angry at her parents for breaking a promise to take her to her boyfriend's house and threatened that she would get even with them. The mother stated that she did take the victim to her boyfriend's house that evening, and the victim and her boyfriend ran away.

The defendant testified that he was unemployed due to surgery on his leg and that his source of income in 1989 was Social Security disability. He stated that he had asked his children to help on the farm, but that when he asked the victim to help him out it had never meant to have sex. He further testified that he had never offered her money for sex. The defendant also testified that he never was alone with his daughter on December 5, 1989, and that he did not have sexual intercourse with her on that date.

We turn first to the claim of error in the admission of evidence of other sexual activity between the victim and the defendant. The defendant alleges that the effect of the testimony of the victim and her brother was to suggest that the defendant had the character of a pedophile and that he acted in conformity with that character. Neb. Rev. Stat. § 27-404(2) (Reissue 1989), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This court has frequently noted that § 27-404(2) is a rule of inclusion rather than exclusion; the list of acceptable uses recited in the statute is illustrative and not intended to be exclusive. See, e.g., *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991).

In reviewing the admission of evidence of other acts under § 27-404(2), an appellate court considers (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *State v. Stueben*, 240 Neb. 170, 481 N.W.2d 178 (1992); *State v. Stephens, supra*.

The two segments of the testimony given by the victim's brother which the defendant claims are erroneously prejudicial relate to the brother's recitation that he observed the victim and the defendant in the victim's bedroom in the spring of 1989, at which time the defendant was fondling the victim, and to the incident during the period between Thanksgiving and December 5, 1989, when he observed the two in the victim's bedroom with the defendant on top of the victim and engaging in sexual intercourse.

In a similar manner, a claim of error is made by the defendant as to portions of the victim's testimony. After testifying to the facts surrounding the event which is the basis for the complaint,

the victim testified that this was not the first time in her life that she had engaged in sexual intercourse; that it had occurred when she was 5 years of age; that sexual intercourse with the defendant was had more than two times; and that during the period of November 1989 back to her 14th birthday, she had sexual relations with her father two to three times per week.

The victim also described the manner in which her father would request sexual intercourse; i.e., he would ask her to "help him." She also stated that the defendant would offer her $10 for sex; that she took the money; and that the defendant would have sex with her not only in her bedroom, but in the defendant's bedroom, the bathroom, outside in a field, and in a car. The victim described the preparations her father would make if intercourse was to be out in the fields; she said that the weeds would be trampled down and a tentlike cloth would be laid on the ground. She also insisted that the defendant would always have in his possession a condom and the $10 to pay.

The police officer who took the victim into custody on December 9, 1989, testified without objection that in response to a question from him, the victim stated that her father "had raped her when she was 5, and since she had been in the fifth grade he continually offered her $10.00 in exchange for her allowing him to make love to her. She advised that he referred to it as helping him out." Also, a deputy sheriff who later interviewed the victim testified as a defense witness that she said her father had fondled her, but that she had not had intercourse with him since after she was about 5 years old. Finally, the pediatrician who examined the victim, albeit it some months after the offense charged, testified that the victim had told him during his obtaining a medical history that she had been sexually abused by her father since she was approximately 5 to 7 years of age.

Therefore, at the outset it may be stated that the testimony of the victim and her brother, although more detailed than that of the witnesses set forth above, was merely cumulative. Additionally, the testimony of both the victim and her brother was relevant and material to prove opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake, all legitimate purposes for admitting testimony of

prior bad acts under the provisions of § 27-404(2). See, e.g., *State v. Stephens, supra*; *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1989).

Finally, the defendant was charged with the offense of incest, in violation of § 28-703, for knowingly engaging in sexual intercourse with his minor daughter. This court noted in *State v. Stephens, supra*, that

> sexual crimes have consistently been classified as offenses in which evidence of other similar sexual conduct has been recognized as having independent relevancy and that such evidence may be admissible whether that conduct involved the complaining witness or third parties. [Citations omitted.] As we said in *State v. Craig*, [219 Neb. 70,] 76, 361 N.W.2d [206,] 212 [(1985)]: "[E]vidence of repeated incidents may be especially relevant in proving sexual crimes committed against persons otherwise defenseless due to age—either the very young or the elderly. Without proof by other acts of a defendant, sexual offenses against the defenseless, except in cases of the fortuitous presence of an eyewitness, would likely go unpunished."

237 Neb. at 556, 466 N.W.2d at 785-86.

Also, the trial court properly instructed the jury to consider the evidence only for the purpose for which it was admitted. The jury was informed by instruction No. 8:

> Evidence of other crimes, wrongs, or acts should not be considered as proof that the Defendant acted accordingly.
>
> It may be proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> The State of Nebraska is still required to prove beyond a reasonable doubt that the defendant committed the offense with which he is charged on the date alleged in the information filed by the State.

The admission by the court of the testimony of the victim and her brother was not erroneous, and that assignment of error is without merit.

Defendant then claims that the evidence is insufficient to support his conviction.

In determining the sufficiency of the evidence to sustain a

conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of a jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Campbell*, 239 Neb. 14, 473 N.W.2d 420 (1991).

On a claim of insufficiency of the evidence, a guilty verdict will not be set aside in a criminal case where such verdict is supported by relevant evidence. Only where the evidence lacks sufficient probative force as a matter of law may a guilty verdict be set aside as unsupported by evidence beyond a reasonable doubt. *State v. Alcorn*, 240 Neb. 400, 481 N.W.2d 921 (1992).

Defendant argues that because the victim's testimony as to the events of December 5, 1989, consists of "a scant 20 lines in the entire Bill of Exceptions," brief for appellant at 12, the evidence is so lacking in probative value as to render it insufficient to support the defendant's conviction. The defense contends that testimony from the victim's mother, the defendant, the deputy sheriff, and the victim herself directly refute the victim's incriminating testimony.

It is true that the deputy sheriff testified that during his interview of the victim on December 10, 1989, she told him that she had not had intercourse with her father since she was about 5 years old. A Child Protective Services worker testified that in the spring of 1987, she interviewed the victim and the victim indicated at that time that there had not been any actual physical contact between her and her father.

The victim testified that she did not tell the deputy sheriff about the sexual intercourse with her father because he was a man, and she felt uncomfortable around men. She explained that in 1987 she did not tell the Child Protective Services worker or her guidance counselor about the sexual intercourse because "she didn't want to get taken away from my family."

The defense attempted to establish through the testimony of the mother that the victim was never alone with her father. The mother testified that she had surgery in November 1989 which prevented her from driving, so she would have been home in the mornings, afternoons, and evenings. She stated that if she

wanted to go anywhere, her husband, the defendant, had to take her. However, on cross-examination she testified that on December 9, 1989, she drove the victim to town and later "drove around town for a while and looked for her." In rebuttal, the victim testified that after her mother's surgery, her mother still drove to get groceries, to visit the victim's grandmother, and to take the victim's brother to work in an adjoining town.

As previously stated, credibility of the witnesses and the plausibility of their explanations are matters for the finder of fact. Here, the victim testified that her father came into her room on December 5, 1989, fondled her, kissed her, and engaged in sexual intercourse with her. The victim's brother, who was 18 years old at the time of trial, testified that he had observed his father engaging in sexual intercourse with the victim between Thanksgiving and December 5. Although the testimony of these two witnesses was at times contradictory, we cannot say as a matter of law that it was unbelievable.

The pediatrician testified that the victim's history and physical examination indicated sexual activity and significant sexual trauma.

The evidence, considered as a whole, was sufficient to support the jury's finding of guilt beyond a reasonable doubt. The judgment of the district court is affirmed.

AFFIRMED.