STATE OF NEBRASKA, APPELLEE, V. ROBERT T. FARRELL, APPELLANT.

497 N.W.2d 17

Filed March 12, 1993.    No. S-91-545.

Lawrence G. Whelan for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant, Robert T. Farrell, appeals his conviction, after jury trial, of unlawful possession of a controlled substance, methamphetamine. He was sentenced to imprisonment of 20 months to 3 years, with credit for time served. Defendant timely appealed, and, in this court, assigns four errors. He contends that the trial court erred: (1) "by determining the defendant had no standing to attack the 'wiretap' used to satisfy the probable cause requirement necessary for the issuance of the search warrant"; (2) in failing to suppress the evidence of methamphetamine found in the pocket of a pair of shorts

defendant put on after his arrest; (3) in failing to suppress testimony or evidence regarding marijuana located at 312 North 54th Street; and (4) in failing to determine that the evidence was insufficient to establish defendant's guilt.

The record shows the facts hereinafter set out. During an investigation in January 1989, the Federal Bureau of Investigation determined that Gary Apker, who was affiliated with the Hell's Angels' motorcycle group, was a prime suspect as a distributor of methamphetamine in the Omaha area. During that investigation in 1989 and 1990, it was discovered that defendant and Sandra Volkir had an association with Apker. Defendant and Volkir had known each other since 1972, had renewed dating in 1987, and had married on May 23, 1990.

Pursuant to federal and state court orders, a wiretap on Gary Apker's telephone and a listening device in Apker's residence were authorized. Apker's telephone communications were intercepted between June 24 and September 7, 1990. Oral communications inside Apker's residence were intercepted by a listening device between August 9 and October 17, 1990. 780 conversations were intercepted. After this electronic surveillance, search warrants were issued for the residence of defendant's wife, Sandra Volkir, at 507 South 68th Street in Omaha; and the residence, owned by the estate of defendant's deceased mother at 312 North 54th Street, also in Omaha. Defendant had not lived at the North 54th Street residence after May of 1990 when he moved into Volkir's residence after their daughter was born. Defendant testified at trial that he stayed with Volkir in the master bedroom at the South 68th Street house, and kept his clothes there. He also testified that after he moved in with Volkir, he visited the 54th Street residence on an approximately daily basis to check for newspapers and mail and for security reasons. At the time the search warrants were executed, only a hired housekeeper was staying there.

Both search warrants were executed on October 17, 1990, at 7:00 a.m. After knocking on the door and receiving no response, officers forcibly entered the home on South 68th Street. Once inside, the officers heard a barking dog behind a locked bedroom door and forced their way into the room. Inside the room they found the defendant standing nude at the

foot of the bed, near a window. Sandra Volkir was in the bed beneath some covers, and their baby was in a crib. In another bedroom, officers found Volkir's sister. After the officers handcuffed defendant, he requested permission to dress. An officer asked him what he needed, and the defendant responded by nodding toward a pair of shorts on the floor of the bedroom. The officer picked up the pair of shorts, asked if they were what defendant wanted; and, after receiving an affirmative response, helped the defendant to don them.

All the persons found in the home were taken to the living room. Once there, two of the officers overheard the defendant whisper to Volkir, "I've got it." Later, defendant requested to use the bathroom. At that time an officer conducted a search of the defendant and, in the right front pocket of the shorts, found a small plastic bag containing a substance later determined to be methamphetamine.

One of the deputy sheriffs who entered the bedroom where the defendant and Volkir were found had noticed at that time that the screen of the window by which the defendant was standing, was pushed out and torn. At approximately 1 p.m. the officer searched outside the house, and directly below the window of the bedroom where the defendant was seized, the officer found a plastic container and several plastic "baggies" later determined to contain methamphetamine residue. The officer also noticed the ground directly beneath the window was covered with a fine, white powder.

In the bedroom where the defendant was seized, the officers discovered $3200 in a shoe box in the closet, several bongs for marijuana consumption, and several small scales. On top of the dresser in the bedroom, the officers found a sifter and phone guard, and on the chest of drawers, two bottles of inositol powder, a cutting agent for methamphetamine. In the chest of drawers, the officers found several plastic bags containing a powdery residue, a snow seal, two small spoons, and a metal box. Other items found in the home included a bag of marijuana and several marijuana pipes. At trial, testimony presented by the State explained the usage of these items, for purposes of using, selling, or distributing methamphetamine.

The house on North 54th Street was searched at

approximately the same time. A woman serving as a housekeeper resided at this location. The officers executing the search warrant there found a quantity of marijuana in a desk located on the second floor. In a bathroom adjacent to the defendant's bedroom in that house, an officer discovered a snow seal containing methamphetamine in a false bottomed can.

Defendant was charged with unlawfully and knowingly or intentionally possessing methamphetamine. He filed motions to suppress any statements made by him and any evidence seized pursuant to the search warrants. After an evidentiary hearing, the court overruled his motions. The trial was later held and a verdict of guilty was returned.

Defendant's first assignment of error contends that the trial court erred in determining the defendant had no standing to attack the 'wiretap' at the Apker residence. The court need not address this issue if it finds that the defendant failed to properly preserve the issue for appellate review.

We first note that defendant's filed motion to suppress on this issue sought an order suppressing the evidence

> because of an illegal search and seizure; that the evidence was not in plain view; and that there was no probable cause based upon an insufficient affidavit; and if there was probable cause to search . . . there was no probable cause to arrest, absent a warrant; that this was done in violation of the common law, the Nebraska State Constitution at Sec. 7, Art. 1, the United States Constitution at Article 4 of the Amendments.

At the pretrial hearing on this motion, the State offered the search warrants for each of the houses searched and the affidavit in support of each warrant. Defendant had no objection to the receipt of that evidence for the purposes of the hearing, and the trial court received the warrants and affidavits as evidence at the hearing. The State offered no other evidence at the pre-trial hearing.

Defendant then informed the court that he wanted to present evidence as to the information relied on by a United States district judge and a Douglas County district judge in issuing the order allowing electronic surveillance of Gary Apker. The

·prosecuting attorney contended that such evidence was not relevant

for purposes of this particular hearing. The purpose of this hearing is whether or not probable cause existed for the issuance of the warrants. . . . This hearing is not scheduled for . . . [judging] the procedural correctness of any and all wiretaps that were involved through the federal or state court system and I don't see that as the determination that should be made by this court at this time.

The trial court ruled that the exhibits offered by defendant were irrelevant and constituted "a collateral attack on something that's not before the court." Later the court told defendant that the court was "going to buttress my sustaining of the objections . . . on the grounds that this defendant has no standing to challenge the wiretaps or the bugs that were put on Mr. Apker's house."

It is this later statement which defendant seems to think controls the court's ruling on the issue he seems to want to raise. Defendant does not, in his assignment of error, attack the order refusing to suppress the evidence obtained as a result of the serving of the search warrant. Defendant does not attack the trial court's ruling that defendant's proffered evidence was irrelevant to the issues before the court and that defendant's exhibits at the pre-trial hearing constituted "a collateral attack on something that's not before the court."

Defendant was arraigned on November 8, 1990. His motion to suppress was filed on November 19, 1990, and heard and ruled on on January 11, 1991. The trial began on March 11, 1991. The record does not show that defendant at any time sought an order for the trial court under the provisions of Neb. Rev. Stat. § 86-705(11) (Cum. Supp. 1988), which provides, in part:

Any aggrieved person in any trial, . . . in or before any court, . . . may move to suppress the contents of any intercepted wire, electronic, or oral communication or evidence derived therefrom on the grounds that the communication was unlawfully intercepted, the order of authorization or approval under which it was intercepted

is insufficient on its face, or the interception was not made in conformity with the order of authorization or approval. Such motion shall be made before the trial. . . .

The issues which defendant tangentially raises in his first assignment of error were not properly presented to the trial court. In that state of the record, we hold that the defendant has made no showing that the trial court erred in its refusal to suppress the evidence obtained as a result of the search warrant.

On this issue, we further note that Neb. Rev. Stat. § 27-103 (Reissue 1989) (Nebraska Evidence Rules, Rule 103) provides, in part, "Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and: (a) . . . a timely objection or motion to strike appears of record, stating the specific ground of objection. . . ."

The duty rests on the defendant, after denial of a motion to suppress, to object at trial to the admission of the evidence and to state the specific grounds of the objection if a specific ground is not apparent from the context in which the objection was made. *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Douglas*, 238 Neb. 11, 468 N.W.2d 612 (1991). In *State v. Richard*, 228 Neb. 872, 885, 424 N.W.2d 859, 868 (1988), we held:

> Unless the objection to offered evidence be sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objection and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom in the court of appeal.

Whatever grounds defendant was relying on to support his objections cannot be determined from the record in this case. The first objection at trial was stated by defendant to be ". . . for the reason as previously noted by the defendant in a motion filed . . . and also for the issue of relevancy . . ." Other objections were "Same objection." These were several objections worded, "Same objection as Exhibit 12"; and the objection to Exhibit 12 was "Same objections, plus it's duplicative of Exhibit No. 9." It is difficult to determine the reason for defendant's objections on review when the court has the luxury of reviewing the record to try to determine the

grounds for defendant's objections. It had to be extremely difficult for the trial judge in the give and take of the trial. Defendant's first assignment of error is without any merit.

In his second assignment of error, defendant contends that the district court erred in failing to suppress the "baggie" containing methamphetamine found in the defendant's pocket. Defendant's reliance on *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), is misplaced. In *Ybarra*, the Supreme Court held that a search conducted on specified premises pursuant to a warrant did not give officers authority to search persons on the premises without probable cause. The court held that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* at 91. The complaint filed in support of the warrant in *Ybarra*, gave no indication that persons on the premises, other than the bartender named in the warrant, were involved in the sale or purchase of illegal drugs. The defendant in *Ybarra* made no movements that might suggest criminal conduct, nor did he say anything of a suspicious nature. In addition, the State was unable to articulate any specific fact that would justify the search of Ybarra.

The case before us presents different facts. Defendant is specifically mentioned in the application for the search warrant as being suspected of possession, distribution, financing, and laundering of monies received from the sale of illegal drugs. Testimony at trial showed that defendant was not searched until he requested to use the bathroom. Prior to this request, officers overheard defendant whispering to Volkir, "I've got it." "Probable cause is defined as a reasonable suspicion founded on articulable facts." *State v. Hodge and Carpenter*, 225 Neb. 94, 99, 402 N.W.2d 867, 872 (1987). The officers had sufficient articulable facts to believe that defendant was involved in criminal activity. From the statement made by the defendant and overheard by the officers, it was reasonable for the officers to believe that defendant was concealing evidence on his person. Defendant's request to use the bathroom indicated that defendant might attempt to destroy the evidence. Under these circumstances, the trial court was correct in admitting the evidence. Defendant's second assignment of error is without

merit.

Defendant's third assignment of error alleges that the trial court erred in not suppressing the evidence found at the 312 North 54th Street address. This assignment is also without merit. As set forth in Neb. Rev. Stat. § 27-404(2) (Reissue 1989):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In reviewing the admission of prior acts, the reviewing court should consider the relevance of the evidence, the purpose for its introduction, and the probative value balanced against its potential for unfair prejudice. *State v. Stephens*, 237 Neb. 551, 555, 466 N.W.2d 781, 785 (1991). It should also consider whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *Id*. Defendant did not make such a request and therefore that factor will not be addressed. Defendant testified that he did not know there were illegal drugs in either house. He maintained that the shorts in which the methamphetamine was found, although his, were worn by both him and his wife. The evidence of marijuana found at 312 North 54th Street was relevant to show that the defendant did in fact know there were illegal drugs present in both houses and is also probative of defendant's knowledge and absence of mistake regarding the methamphetamine found in the pocket of the shorts defendant was wearing. Defendant's third assignment of error is without merit.

Defendant's final assignment of error questions the sufficiency of the evidence to sustain his conviction. In reviewing a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient

evidence to support it. *State v. Williams*, 239 Neb. 985, 989, 480 N.W.2d 390 (1992).

The defendant was convicted of violating Neb. Rev. Stat. § 28-416(3) (Reissue 1989), which states in pertinent part: "A person knowingly or intentionally possessing a controlled substance, except marijuana, . . . shall be guilty of a Class IV felony." Defendant resided in the home in which the methamphetamine was found. When the officers entered the bedroom, defendant was standing next to a window with the screen pushed out. Later that same day evidence of methamphetamine was discovered directly below that window. "[C]ircumstantial evidence is proof of collateral facts and circumstance from which the mind infers the conclusion that the facts sought to be established in fact existed." *State v. Morley*, 239 Neb. 141, 149-50, 474 N.W.2d 660, 667 (1991). The jury could infer from defendant's position when the officers entered the room, the condition of the window screen, and the later discovery of the methamphetamine under the window that the defendant had attempted to rid himself of the evidence before the officers forcibly entered the home. Testimony given at trial also demonstrated the evidence found in defendant's bedroom was consistent with materials used in the distribution and sale of methamphetamine.

Furthermore, the valid search of the defendant produced a "baggie" containing methamphetamine. The shorts containing the illegal substance were admittedly his. Although defendant stated his wife also wore them during her pregnancy because they were comfortable, according to defendant's testimony, his wife delivered the child in May of 1990, 5 months before the searches were conducted. In addition, viewing the evidence in the light most favorable to the State, defendant himself requested the shorts which contained the methamphetamine. "A defendant possesses a controlled substance when the defendant knows of the nature or character of the substance and its presence and has dominion or control over the substance." *State v. Lonnecker*, 237 Neb. 207, 213, 465 N.W.2d 737, 742 (1991). Defendant's knowledge of the substance contained in his pocket is established by his whispered statement to Volkir, "I've got it." The evidence was sufficient to

sustain the conviction of the defendant. Defendant's fourth assignment of error is without merit.

There was no error in the trial court's actions as alleged by defendant. The judgment is affirmed.

AFFIRMED.