Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/13/2022 08:08 AM CDT

State of Nebraska, appellee,
v. Isacc John, appellant.
___ N.W.2d ___

Filed February 18, 2022.    No. S-21-118.

1. **Verdicts: Insanity: Appeal and Error.** The verdict of the finder of fact on the issue of insanity will not be disturbed unless there is insufficient evidence to support such a finding.
2. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.
3. **Effectiveness of Counsel: Appeal and Error.** An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.
4. **Insanity: Proof.** The insanity defense requires proof that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.
5. ____: ____. A defendant who pleads that he or she is not responsible by reason of insanity has the burden to prove the defense by a preponderance of the evidence.
6. **Trial: Appeal and Error.** An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition.
7. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct

appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

8. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

Kenneth Jacobs, of Hug and Jacobs, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

Isacc John appeals his convictions and sentences for first degree murder and use of a deadly weapon, not a firearm, to commit a felony. John asserts that, as the trier of fact, the district court for Douglas County erred in finding he did not prove his insanity defense. Further, John asserts trial counsel was ineffective in waiving his right to jury trial and in stipulating to the underlying facts of the killing. Finding no merit to the appeal, we affirm John's convictions and sentences.

## BACKGROUND

On December 12, 2015, officers with the Omaha Police Department were called to Linda Chase's residence in Omaha, Nebraska. At that location, the officers found Chase deceased in the bathtub. Her body had extensive stab wounds, but the officers found little blood within the home. Officers did

find some blood spatter in the kitchen and on the stairs and reported the smell of cleaning products. A rug with deep bloodstains was found in the dryer.

The officers learned that Chase shared her residence with John and issued a "locate warrant" for John. In response to the warrant, officers advised that they had interacted with John near 40th and Dodge Streets, concerning a call of individuals' smoking marijuana in a business, and that John would still be in that area. Upon arrival, a sergeant investigating the case observed John was wearing shorts with "red staining." John had bloodshot eyes and was emotional, angry, screaming, and crying. Chase's family mentioned that John was a user of methamphetamine. Officers took John to the hospital to have his vitals checked and then to "[c]orrections" for the night.

Pursuant to a search warrant for Chase's home, officers found a large, bent kitchen knife, scissors, and other items with blood and hair on them. Based on the small amount of blood found, officers concluded that whoever had killed Chase had taken the time to clean up the crime scene and Chase's body. Officers collected cleaning bottles from the kitchen and basement.

On January 11, 2016, John was charged with first degree murder and use of a deadly weapon, not a firearm, to commit a felony. Pursuant to Neb. Rev. Stat. § 29-1823 (Reissue 2016), John requested that the court determine his competency to stand trial. The court held hearings regarding John's competency on January 17 and February 17, 2017.

John adduced testimony from Dr. Bruce Gutnik, who authored a report in April 2016 finding that John was not competent to stand trial based upon a 1-hour-45-minute evaluation, as well as a review of police reports and Chase's autopsy results. Gutnik examined John's intellectual and cognitive functions and found he suffered from a flat affect, loose associations, hallucinations, and delusions. Gutnik opined that John met all the criteria for schizophrenia. Though Gutnik opined that John was not competent to stand trial, he further

opined that under appropriate treatment, John could become competent within a reasonable time.

Gutnik conducted a second evaluation of John, lasting approximately 1 hour 50 minutes, and he opined in September 2016 that John was still not competent to stand trial. Gutnik stated he did not observe John to be malingering, reasoning he had improved from taking the antipsychotic medication Zyprexa, which improvement John would not have been able to fake.

At the request of the State, John's competency was also evaluated by mental health professionals at the Lincoln Regional Center. Forensic psychiatrist Dr. Klaus Hartmann authored a report in July 2016 indicating further evaluation and observation of John was necessary due to concerns he was malingering, or faking symptoms of a mental illness. Following an extended evaluation, Hartmann found no indication that John was confused, disorganized, or acting in a bizarre or odd fashion. Hartmann found John had exaggerated his symptoms and had been uncooperative with the evaluation, which indicated a serious likelihood of malingering. Regarding John's Zyprexa prescription, Hartmann stated the medication was not necessary and would not have much effect on John other than to cause weight gain. Hartmann submitted a report in August which opined that John was malingering and competent to stand trial.

Due to delayed proceedings, each medical expert completed an additional evaluation of John, and in January 2017, they submitted reports generally consistent with their previous findings.

In April 2017, the court entered an order finding John competent to stand trial. The court noted that the experts had presented diametrically opposing views on the issue of John's competency. The court adopted the opinion of Hartmann, noting that in addition to the January 2017 evaluation, the professionals at the Lincoln Regional Center had the benefit of evaluating John from July 12 to August 16, 2016. The court

was further persuaded by the assessments of John's treating psychiatrist, as well as the evaluations of clinical psychologist Dr. Sherri Browning. Browning found John provided vague answers to standard questioning, such as claiming he was hearing voices, but being unable to describe the voices, what they said, or the last time he heard them. Browning stated that it is out of the ordinary for a patient to provide vague descriptions of symptoms, because "[u]sually when patients are hearing voices, they can tell me exactly what the voices are saying . . . ." Browning further explained that "[u]sually when folks are experiencing psychiatric symptoms, these symptoms are very painful and very frightening and scary. And he was not experiencing any emotional distress when talking about the symptoms." Browning believed that John was malingering because, despite no history of mental illness, John claimed he had these symptoms for a long time. Through subsequent evaluations, Browning noted John's description of his symptoms changed and became inconsistent.

The court accepted Browning's diagnosis that John was malingering based on test results and the lack of signs of mental illness exhibited by John over the extended evaluation. Browning testified that John

> was doing well at the regional center. We weren't hearing from staff that he was having — that they were observing him experiencing any symptoms. The staff were reporting that he was completing his activities of daily living without any problems, attending groups without any problems.
>
> They hadn't observed him experiencing any symptoms of mental illness, meaning they didn't see him talking to the voices or talking to people that weren't there. They didn't visibly see him being depressed or crying. He seemed to be — based on the reports I received, that he was doing well.

The court found "sufficient evidence that . . . John has the capacity to understand the nature and object of the proceedings

against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense."

John waived his right to a jury trial, and the matter proceeded to a bench trial. Evidence as to the underlying facts of the killing was submitted through stipulated reports and photographs. Live witnesses were called as to John's insanity defense.

John called as a witness his former attorney, who testified that on December 11, 2015, John caused a disturbance in the lobby of her office. John was laughing hysterically and talking in a manner she was unable to understand. John's former attorney testified that when she informed John she may need to call security, he "curl[ed] up into a ball" and started crying. She also testified that John did not smell like alcohol or marijuana.

Gutnik testified regarding each of his evaluations. Gutnik testified regarding John's blunted affect and rapid speech. When asked about what happened the night of Chase's killing, John told Gutnik he was drunk and high on marijuana, which might have been laced with another drug. However, laboratory results showed only "THC" in John's bloodstream at the time of his arrest. Gutnik diagnosed John with schizophrenia, alcohol and cannabis use disorder, and a possible schizoaffective disorder. Gutnik's subsequent reports indicated that John showed symptoms of schizophrenia, such as "talk[ing] to the television." Gutnik opined in his January 2017 report that John suffered from schizophrenia and was not malingering. Gutnik opined that on December 12, 2015, John stabbed and killed Chase while suffering from schizophrenia and "responding to the world based on hallucinations and delusions." Gutnik opined John did not understand the nature and consequences of his actions and did not understand the difference between right and wrong.

John called as a witness Dr. Kirk Newring, a licensed psychologist. Newring testified, based on his two evaluations of John, that he did see some signs of malingering, but to an

extent that would be typical. Newring conducted the same malingering test as used by Browning and found John made no attempt to malinger. Newring found that John's behavior prior to the killing was consistent with schizophrenia. Newring, like Gutnik, opined John was experiencing schizophrenia at the time of the killing and was unable to appreciate the nature and consequences of his conduct and could not tell the difference between right and wrong.

The State adduced testimony from Hartmann and Dr. Jennifer Cimpl Bohn. On June 11, 2020, Hartmann and Cimpl Bohn evaluated John to determine whether he was insane at the time of the killing. Hartmann opined John was not insane at the time of the killing and was malingering. Hartmann stated John did not appear to be psychotic, but, rather, he could speak in an articulate and coherent manner, especially when he was not being observed for an examination. Hartmann noted a telephone call John made from jail in which he told his mother that he needed to "prove . . . to the doctors that he was crazy." Hartmann opined John was not mentally ill and stated John had been able to conduct himself appropriately during the months he spent in jail. Hartmann stated it was possible John had been extremely intoxicated during the killing. Hartmann opined John understood the stabbing was wrong because he attempted to clean up the crime scene.

Based on her evaluation of John and her review of his competency and insanity evaluations, Cimpl Bohn opined that even if John suffered from schizophrenia, he understood right from wrong with respect to the killing.

Following trial, the district court found the State had proved John guilty beyond a reasonable doubt of murder in the first degree and use of a deadly weapon, not a firearm, to commit a felony. The court found John failed to prove by the preponderance of the evidence that he had a mental disease or defect and that he did not understand the nature and consequences of his actions or the difference between right and wrong. The court sentenced John to consecutive sentences

of life imprisonment and 40 to 50 years' imprisonment, with credit for time served.

John appealed directly to this court.[1]

## ASSIGNMENTS OF ERROR

John assigns, restated, that the district court erred in finding he did not prove his insanity defense. John also assigns that he received ineffective assistance of trial counsel, arguing (1) counsel should not have waived his jury trial right and proceeded with an insanity defense knowing the court had previously found John to be malingering and (2) counsel should not have stipulated to the underlying facts of the killing, because John could have claimed he acted in self-defense.

## STANDARD OF REVIEW

[1] The verdict of the finder of fact on the issue of insanity will not be disturbed unless there is insufficient evidence to support such a finding.[2]

[2,3] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.[3] We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.[4]

---

[1] Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2020).

[2] *State v. Johnson*, 308 Neb. 331, 953 N.W.2d 772 (2021); *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020); *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009); *State v. McGhee*, 274 Neb. 660, 742 N.W.2d 497 (2007).

[3] *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020); *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018).

[4] *Id*.

## ANALYSIS

### Insanity Defense

[4,5] Any person prosecuted for an offense may plead that he or she is not responsible by reason of insanity at the time of the offense.[5] Generally, under Nebraska's common-law definition, the insanity defense requires proof that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.[6] A defendant who pleads that he or she is not responsible by reason of insanity has the burden to prove the defense by a preponderance of the evidence.[7]

To support his insanity defense, John relies on the testimony of Gutnik and Newring who opined he killed Chase while suffering from schizophrenic delusions. Gutnik evaluated John on three occasions and found John was not malingering. Gutnik viewed John's improvements from taking Zyprexa as a sign of genuine illness which would be difficult to malinger. John argues the medication was successfully treating an illness, because his prescription continued during his stay at the Lincoln Regional Center. John argues, therefore, the trial court erred in finding that he did not have a mental disease or defect at the time he killed Chase.

The State presented opposing medical testimony from Hartmann, and other Lincoln Regional Center professionals, who had the benefit of evaluating John over a period of 6 weeks. Hartmann opined John was malingering and did not

---

[5] Neb. Rev. Stat. § 29-2203(1) (Reissue 2016). See, *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983); *State v. Newson*, 183 Neb. 750, 164 N.W.2d 211 (1969).

[6] *State v. Bigelow*, 303 Neb. 729, 931 N.W.2d 842 (2019); *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). See NJI2d Crim. 7.0. See, also, NJI2d Crim. 3.2.

[7] *France, supra* note 2; *McGhee, supra* note 2. See § 29-2203(1).

have a mental defect. Browning likewise found John to be malingering, noting his exaggerations and inconsistencies in describing his symptoms. Moreover, Cimpl Bohn opined John understood right from wrong at the time of the killing regardless of his schizophrenia diagnosis.

[6] An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition.[8] Here, the fact finder heard and rejected the evidence offered by John in support of his insanity defense. The court implicitly accepted the State's evidence and rejected John's. There is evidence in the record that would support the conclusion that John was not insane, including John's attempting to clean up the crime scene, exhibiting appropriate behavior while in jail, and making a statement that he needed to "prove . . . to the doctors that he was crazy." We conclude that the district court did not err in finding that John was not insane at the time he killed Chase. This assignment of error is without merit.

### Ineffective Assistance of Trial Counsel

John argues he received ineffective assistance of trial counsel, who was different from his appellate counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[9] John claims he was provided ineffective assistance when trial counsel (1) proceeded with a bench trial, knowing the court found in its competency determination that John was malingering, and (2) stipulated to underlying

---

[8] *McGhee, supra* note 2. See *Stack, supra* note 2.

[9] See, *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020); *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019); *Hood, supra* note 3.

evidence which deprived John of the ability to argue that he acted in self-defense.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[10] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[11] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[12] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[13] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[14] The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.[15]

[7,8] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was

---

[10] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[11] *State v. Stricklin, ante* p. 478, 967 N.W.2d 130 (2021); *State v. Newman, ante* p. 463, 966 N.W.2d 860 (2021).

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] *Hood, supra* note 3.

brought before the appellate court.[16] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.[17]

Therefore, in reviewing John's claims of ineffective assistance of counsel on direct appeal, we decide only whether the undisputed facts contained in the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[18]

Regarding John's claim that counsel should not have proceeded to a bench trial, it is undisputed there is no evidence in the record from trial counsel on this issue. Thus, our record is not adequate to address this issue on direct appeal.

However, we conclude that our record is sufficient to dispose of John's second ineffective assistance claim that counsel should not have stipulated to the admission of police reports, photographs, and evaluation reports showing the underlying evidence of the killing. John contends that by doing so, trial counsel deprived John of the ability to argue that he acted in self-defense.

John relies on the trial testimony from Hartmann and Cimpl Bohn, who both stated that John told them he acted in self-defense. John also relies on Newring's testimony that John told him that John grabbed scissors because Chase had a knife in her hand and stepped toward him. John further claims that Chase cut his finger and that a photograph of his hand on the day of his arrest showed evidence of the cut. John therefore argues that "trial counsel was ineffective in stipulating to the facts of this case, then not asking for the trier of fact to at least consider the use of force in protecting himself."[19]

---

[16] *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

[17] *Id*.

[18] See *Blaha, supra* note 9.

[19] Brief for appellant at 27.

We agree with the State that John's argument is unpersuasive, as there is no clear nexus between stipulating to the background facts and counsel's failure to assert a claim of self-defense. The record indicates that the self-defense evidence which John relies on was presented to the court during trial. Additionally, other evidence offered at trial indicates that John stabbed Chase 29 times, placed her body in the bathtub, cleaned up the crime scene, and fled the residence. We therefore conclude John was not prejudiced by trial counsel's stipulating to the underlying facts of the murder. This assignment of error is without merit.

## CONCLUSION

The district court did not err in concluding John was not legally insane at the time of the killing. In addition, John's trial counsel was not ineffective for stipulating to the underlying facts of the murder. Our record is insufficient to decide John's other claim of ineffective assistance of counsel. We affirm John's convictions and sentences.

AFFIRMED.