IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. KHALAF


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ADRIS K. KHALAF, APPELLANT.


Filed October 11, 2022.    No. A-21-594.


Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Angelica W. McClure, of Kotik & McClure Law, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.


MOORE, RIEDMANN, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Adris K. Khalaf appeals from his conviction following a jury trial in the district court for Lancaster County of two counts of burglary. On appeal, he assigns error to the court's denial of his motion to sever trial of the burglary counts from trial of a public indecency count (which was eventually dismissed before submission of the case to the jury). Khalaf also assigns error to the court's admission of certain evidence, alleges that the evidence was insufficient to convict him of the burglary counts, and alleges that he received ineffective assistance of trial counsel in various regards. Finding no error, we affirm.

## II. STATEMENT OF FACTS

### 1. INITIAL CHARGES

On October 8, 2020, the State filed an information in the district court, charging Khalaf with burglary, under Neb. Rev. Stat. § 28-507 (Reissue 2016), a Class IIA felony, and violation of

- 1 -

the Sex Offender Registration Act (SORA), under Neb. Rev. Stat. § 29-4011(1) (Reissue 2016), a Class IIIA felony. With respect to the burglary count, the State specifically alleged that on, about, or between July 14 and 15, Khalaf willfully, maliciously, and forcibly broke and entered real estate or improvements erected at a certain address on North 44th Street in Lincoln, Nebraska "with intent to commit any felony or with intent to steal property of any value." We note that the State's theory of this particular burglary was that Khalaf entered that victim's residence with the intent to commit the felony of first degree sexual assault. The jury was ultimately instructed with regard to this burglary that the relevant felony was first degree sexual assault, and the jury was given the definitions of first degree sexual assault and related terminology.

## 2. PRETRIAL MOTIONS

On February 22, 2021, the State filed notice of its intention to use evidence of other crimes, wrongs, or acts pursuant to Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2020), seeking to admit, for the purpose of showing intent, evidence that (1) in June 2019, Khalaf sexually assaulted someone and (2) in June and July 2020, Khalaf engaged in a series of encounters where he made sexual overtures to women he did not know, trespassed into the homes of women, and intentionally exposed his genitals and masturbated in public or where he knew he would be seen. Also, on February 24, the State filed a motion seeking to amend the information (to add an additional count of felony burglary and a misdemeanor count of public indecency).

The district court heard the State's motions, as well as an oral motion to sever the counts of the information made by Khalaf's attorney, on February 25, 2021. In support of his motion to sever, Khalaf's attorney argued that the public indecency count the State proposed to add in the amended information did not have "any of the same underlying factual allegations" as the originally charged burglary and SORA offenses. He also argued that burglary counts and a SORA violation were "not of the same character" and simply did not "go together." He argued that the burglary offenses should be tried together, separately from the SORA violation, and that the public indecency count should be filed in county court. The prosecutor argued, however, that the charges in the proposed amended information should be tried together because during the period specified in the amended information Khalaf had engaged in "a series of actions . . . looking for sexual gratification" that were similar in nature and admissible under § 27-404 as evidence of intent. The court granted the State's motion to amend. The court granted Khalaf's motion to sever as to the SORA violation, but it denied his motion with respect to the two burglary counts and the public indecency count of the amended information, stating that in the trial of those charges "it's not going to . . . be in front of a jury [in that trial] that [Khalaf's] a registered sex offender."

In support of its motion to admit evidence under § 27-404(2), the State offered a transcription of the preliminary hearing conducted in county court for this case; Lincoln Police Department reports related to various incidents involving Khalaf occurring on June 28 and July 14-16, 2020 (including his masturbation at the swimming pool of an apartment complex and in the police interview room following his arrest in this case); a certified copy of Khalaf's conviction for misdemeanor third degree sexual assault in 2019; and a police transcription of a statement given by the victim in the 2019 case. The prosecutor argued that these incidents reflected Khalaf's intent in connection with the first charged burglary offense. Khalaf's attorney argued, however, that the State's evidence of his other acts was being offered to show his propensity to commit sexual

assault. The district court ruled that evidence relating to Khalaf's 2019 conviction would not be allowed as "it's more propensity evidence than . . . showing of intent," but it found that evidence relating to the June and July 2020 incidents reflected in the State's other exhibits would be allowed for the purpose of showing intent.

### 3. AMENDED INFORMATION AND OTHER PRETRIAL PROCEEDINGS

On February 26, 2021, the State filed the amended information, adding to the burglary and SORA violation counts of the original information, a second count of burglary in violation of § 28-507, a Class IIA felony, and a count of public indecency, in violation of Neb. Rev. Stat. § 28-806 (Cum. Supp. 2020), a Class II misdemeanor. As relevant to this appeal, the State alleged that on July 14, 2020, Khalaf broke and entered real property on North 44th Street in Lincoln "with intent to commit any felony" (the first burglary count); that on July 15, he broke and entered real property on Sawyer Street in Lincoln with the intent to steal property of any value (the second burglary count); and that on July 15 he performed an exposure of the genitals in a public place with the intent to affront or alarm any person (the public indecency count). We note that the severed SORA violation count was tried to a jury in March 2021 and that the jury found Khalaf not guilty of that count.

A plea hearing was held before the district court on July 16, 2021, based on the State's offer to file a second amended information, charging Khalaf with "two Class 1 misdemeanors, trespass; and two Class 2 misdemeanors of public indecency." At the hearing, however, Khalaf declined to accept the plea offer and expressed his desire to proceed to trial on the remaining counts of the amended information. Upon inquiry by the court, Khalaf confirmed that he was making the decision to reject the plea offer and proceed to trial on the remaining counts of the amended information freely and voluntarily and that he had received no promises or threats related to his decision. The court also confirmed that Khalaf's attorney had spoken with him about the decision and that the attorney felt Khalaf was making the decision to proceed to trial freely, voluntarily, knowingly, and intelligently.

### 4. JURY TRIAL ON BURGLARY AND PUBLIC INDECENCY COUNTS

A jury trial on the burglary and public indecency counts was held on May 12-14, 2021. Outside of the jury's presence and prior to the presentation of any evidence, Khalaf's attorney renewed his prior objections concerning the joinder of the public indecency count with the burglary counts and the State's "404 evidence." The attorney asked for a continuing objection, which the district court granted and again overruled the objection. The State then presented testimony from witnesses about both burglary incidents, as well as about the masturbation incidents at the apartment swimming pool and the police interview room. The court received various photographic exhibits offered by the State, as well as video recordings showing both the swimming pool and the interview room incidents.

### (a) First Burglary

C.L. testified that on July 14, 2020, she was living in an apartment on North 44th Street in Lincoln with a roommate. C.L. recalled waking up on the morning of July 14 to see an unfamiliar man at the foot of her bed. She was "shocked and confused" to see him because she "didn't know

how he got in and why he was there." According to C.L., the man said, "Your roommate's gone. Can I use your phone." C.L. asked some questions to clarify what he was looking for and what he needed, to which he responded that "he was trying to get someone to come get him or get some help." After C.L. handed her phone to the man, he looked at it for a while, and C.L. then asked if she could help him find what he was looking for so that she could get him out of the apartment, fearing that he might become aggressive.

According to C.L, she did not "feel safe" in her bedroom with him, so they went into the dining room where she sat at the table to use her computer and search the names of a couple of people the man stated could "come get him." C.L. did not specify the names given to her by the man. While C.L. was sitting at the table, the man started moving closer to her and began massaging her shoulders. The man stopped when C.L. asked him to and backed away, but he then began "making some comments." First, the man stated that he was "trying to get a girlfriend." When C.L. told the man that she was getting married soon, the man responded by asking C.L. if her fiancé liked certain sexual activity. According to C.L., she tried to return their focus to helping the man find who he was looking for. She attempted unsuccessfully to contact a business at the man's request, during which time the man went to the restroom twice. When the man returned the second time, he knelt "right next to" C.L., who was wearing shorts. The man was wearing jeans. C.L. testified that she remembered then "feeling something against [her] leg, which was not jeans and was not a hand." She elaborated that "it felt like skin," "it felt fleshy," and "it felt softer than a hand." She also did not think it was the skin of the man's elbow because of how he was positioned. C.L. testified that it felt like the skin of a penis but that she did not look to see what was touching her leg because she "was scared."

At that point in the encounter, C.L. stood up from the table, explained that she had been unable to reach the business the man had asked her to call, and asked him if he would leave the apartment until the business opened and she could try the call again. The man responded by asking C.L. if she "need[ed] privacy," whether she was "going to take a shower," and whether he could "just sit on [her] couch." C.L. told the man, "No," again asked him to leave the apartment, and he did so. During the incident, C.L. had texted her roommate, asking her to return, and she called the roommate once the man left the apartment. After the roommate returned, C.L. called the police. At trial, C.L. identified Khalaf as the man who had been in her apartment.

C.L.'s roommate confirmed that she had been living with C.L. on July 14, 2020. The roommate closed but did not lock the door to their apartment when she left for work that morning. Upon exiting the apartment, the roommate observed a man "[u]p the stairs from [the] apartment entrance." The man asked the roommate if he could use her phone, but she refused. Shortly after the roommate reached her workplace that morning, she received a text message from C.L. When the roommate tried to call her, C.L. did not answer, so the roommate left work to return to the apartment because she "knew there was a man in [their] apartment." When she reached the apartment, the roommate saw the same man she had seen previously in the hallway, outside the door of the apartment. She told him to leave, and he did. The roommate then entered the apartment and observed C.L., whom she described as "[s]tunned" and "shocked." At trial, the roommate identified Khalaf as the man she had seen on July 14.

Richard Fitch, a Lincoln police officer, responded to a call on July 14, 2020, regarding a suspicious person at an address on North 44th Street and then to a second call at a nearby address

- 4 -

on North 44th Street. At the second address, Fitch made contact with C.L. and her roommate, who both described the man who had been in (and outside of) their apartment and provided a first name for the individual in question. After speaking with other police officers, Fitch identified Khalaf as the suspect. He then reinterviewed C.L. and took a taped statement from her. After Khalaf was taken into custody on July 15, Fitch transported Khalaf to the scene of the second burglary incident for a "show-up" viewing by the victim of that incident before transporting him to the police station. Fitch identified items depicted in photographic exhibits as the clothing Khalaf was wearing and other items on Khalaf's person (including a condom) when he was taken to the police station.

(b) Swimming Pool Incident

Regina Lanik, a manager with a company that owns several apartment buildings, testified about the surveillance systems in place on July 14, 2020, at an apartment complex on South 90th Street in Lincoln. After receiving a complaint that afternoon about a man near the apartment complex swimming pool, she went to the pool where she observed "[a] man in the pool in his boxers." At trial, Lanik identified Khalaf as the man she had observed that day. Lanik testified that she asked him to leave once she determined he was not a resident. According to Lanik, Khalaf got out of the pool and then "exposed himself," by which she meant he exposed "[h]is penis" to her. She testified that he then "grabbed his clothing . . . tried to cover himself up with pillows, and started masturbating." Lanik described Khalaf as "touching himself, his penis, and stroking." A maintenance employee then confronted Khalaf, telling him that he needed to leave the property, after which Khalaf ran away. Later, Lanik provided law enforcement with the surveillance video of the incident. At trial, she identified exhibit 18 as a copy of that video, and she narrated the video as it was played for the jury. Lanik did not become aware that Khalaf had been masturbating in the pool until she watched the video after the incident. She testified that the point when Khalaf exposed himself to her happened "[w]hen he was exiting the pool" and she was off-screen; she also confirmed that the "part where [Khalaf] was on the chairs and masturbating" was not caught on camera.

(c) Second Burglary

Brawn Clinkenbeard testified that on July 15, 2020, she was living at an address on Sawyer Street. At that time, she kept a spare house key in an electrical box outside the house. That morning, Clinkenbeard heard her boyfriend exit through the garage; she remained in her upstairs bedroom to sleep. She awoke later to her bedroom light turning on and then off. Clinkenbeard got out of bed and saw that her front door was open. According to Clinkenbeard, the front door was kept locked, and she had locked it the night before. After observing the front door, Clinkenbeard said "hello," and then a man walked out from the kitchen and dining room area. The man told Clinkenbeard that "he was just going to hang out there, to get out of the rain." Clinkenbeard testified that she told him, "get the fuck out of [her] house," but that the man refused, insisting that he was "going to sit and hang out here until it quits raining." She repeated herself, screaming at him, after which the man put on his shoes and left through the open front door.

Clinkenbeard then ran down the stairs, shut and locked the front door, and called her boyfriend and the police. She later observed that a food cabinet had been opened, although nothing appeared to have been "moved around" in the cabinet, and that her spare key was missing from

the electrical box. She never found the spare key that had been in the electrical box. At some point after Clinkenbeard first spoke with police that morning, officers brought a suspect to her house in the back of a police car. She identified the man brought by the police as the man she had seen in her house, although at that time he was not wearing the same baseball jersey he had been wearing when he was in the house. At trial, she identified Khalaf as the man she saw that morning in her house, and she identified photographs of the jersey collected from Khalaf by police as the shirt he had been wearing when he was in her house. Clinkenbeard had to pay $270 to have new locks fitted after the incident.

Clinkenbeard's boyfriend also testified, and he described leaving Clinkenbeard's house the morning of July 15, 2020, through the garage, and stated that he closed both the door between the garage and the house and the garage door behind him. He denied going into the kitchen or dining room that morning and recalled that the front door was closed when he left. He also denied having ever retrieved the spare key from the electrical panel outside the house or ever using the spare key.

Lincoln police officer, Jason Hellmuth, responded to a call about a trespass or burglary at a residence on Sawyer Street on July 15, 2020, where he made contact with Clinkenbeard. Hellmuth took various photographs of the residence and obtained a statement from Clinkenbeard. While conducting an investigation at the residence, Hellmuth received word that other officers had a suspect in custody. The other officers brought the suspect to the residence, where he was presented to Clinkenbeard to see if she recognized him. Hellmuth saw the suspect at that time, and at trial, he identified Khalaf as the suspect who had been brought to the residence on July 15.

### (d) Arrest and Interview Room Incident

Lincoln Police Sergeant Justin Armstrong testified about his involvement in the investigation involving Khalaf on July 15, 2020. Armstrong had contact with Khalaf after other officers arrested and transported him to the police station and placed him in an interview room. According to Armstrong, Khalaf was alone in the interview room for a period and a recording of Khalaf's time in the interview room was saved.

Angela Yates, a records technician for the police department, transcribed the video of Armstrong's July 15, 2020, interview of Khalaf, including the time Khalaf was alone in the interview room. She testified that during the course of watching and transcribing the video, she saw something on the video that she was "not expecting," which led her to notify Armstrong of what she had observed. Exhibit 27, which depicts Khalaf exposing himself, masturbating, and talking to the camera, was played for the jury.

### (e) Post-Evidence Motions

Outside the presence of the jury, the State moved to amend the information, changing the dates related to the public indecency count from "on or about July 15th, 2020" to "on, about or between July 14th and July 15th, 2020," in order to include both the apartment swimming pool incident and the police station interview room incident. The district court initially granted the State's motion to amend, but it later reversed that ruling (also outside of the jury's presence), finding that the charged incident related to Khalaf's actions in the interview room and not those at the swimming pool. The court then dismissed the public indecency count "because the evidence clearly showed that [the police station interview room] wasn't a public place."

Khalaf's attorney again renewed his prior objections, and he also asked the district court to dismiss the burglary counts against Khalaf. The court overruled Khalaf's renewed objections and denied the motion to dismiss. Khalaf then informed the court of his decision not to testify in his own defense. Once the jury returned to the courtroom, both parties rested.

### (f) Verdict

On May 14, 2021, the district court submitted the burglary counts to the jury, which found Khalaf guilty on both counts. The court accepted the jury's verdicts and found Khalaf guilty of one count of burglary with intent to commit a felony (first degree sexual assault) and one count of burglary with intent to steal property of any value.

### (g) Sentencing

Following a sentencing hearing on June 17, 2021, the district court sentenced Khalaf to imprisonment for 6 to 12 years on the first burglary count and 4 to 8 years on the second burglary count. The court ordered that the sentences be served consecutively and gave Khalaf 336 days of credit for time served. Khalaf subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Khalaf asserts, reordered, that (1) the district court erred in admitting evidence of other sexualized behavior under § 27-404(2); (2) the court erred in not severing trial on the public indecency count from the jury trial on the burglary counts; (3) the evidence was insufficient to support his conviction on the burglary counts; and (4) his trial counsel was ineffective in failing to (a) provide him with the discovery and investigative reports which prevented him from making an informed decision about whether to have a trial or to aid in his own defense, (b) explain what defense he could raise, and as such, he was unable to make an informed decision on whether to have a trial or to enter a plea to the charged offense, and (c) prepare a defense to the charge, in particular, to depose any witnesses including the victim prior to trial and to call any witnesses to counter such evidence.

## IV. STANDARD OF REVIEW

It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under § 27-404(2), and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022).

A trial court's denial of a motion to sever will not be disturbed on appeal absent an abuse of discretion. *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 311 Neb. 648, 974 N.W.2d 305 (2022). The relevant question is whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. ADMISSION OF § 27-404 EVIDENCE

Khalaf asserts that the district court erred in admitting evidence of other sexualized behavior under § 27-404(2). At the start of trial, the court allowed, but overruled, Khalaf's continuing objection to the State's § 27-404(2) evidence. In his brief on appeal, Khalaf argues that the court should not have allowed the State to present evidence relating to the events represented in the exhibits offered by the State at the hearing in support of its motion to present § 27-404(2) evidence. He acknowledges that the court did not allow the presentation of evidence of his 2019 conviction for misdemeanor third degree sexual assault. And, we note that none of the exhibits offered by the State relating to various incidents involving Khalaf occurring on June 28 and July 14-16, 2020, were admitted into evidence at trial. However, Khalaf argues that evidence relating to his masturbation at the swimming pool of an apartment complex and in the police station interview room following his arrest in this case should not have been allowed at trial.

Section 27-404 provides in part:

> (2) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> (3) When such evidence is admissible pursuant to this section, in criminal cases evidence of other crimes, wrongs, or acts of the accused may be offered in evidence by the prosecution if the prosecution proves to the court by clear and convincing evidence that the accused committed the crime, wrong, or act. Such proof shall first be made outside the presence of any jury.

This is an inclusionary rule which permits the use of evidence of other crimes, wrongs, or acts if such is relevant for any purpose other than to show the defendant's propensity or disposition to commit the crime charged. See *State v. Myers*, 15 Neb. App. 308, 726 N.W.2d 198 (2006). See, also, *State v. Martin*, 242 Neb. 116, 493 N.W.2d 191 (1992) (§ 27-404(2) is rule of inclusion rather than exclusion; list of acceptable uses recited in statute is illustrative and not intended to be exclusive). An appellate court's analysis under § 27-404(2), considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) probative value is substantially outweighed by its potential for

unfair prejudice, and (3) trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019).

The State argues that the evidence presented at trial of the two masturbation incidents was being offered in connection with the first burglary count as proof of Khalaf's intent to commit a sexual assault. The evidence of those two incidents has some relevance to Khalaf's intent in connection with the first burglary. During those incidents, Khalaf exposed himself to the people around him and touched his penis publically and exposed himself in a police interview room with a camera, openly masturbating on both occasions. During his encounter with C.L. he massaged her shoulders without invitation, asked questions of a sexual nature, and approached her closely a second time, touching her with what she believed felt like the skin of his penis.

The Nebraska Supreme Court has held that sexual crimes are offenses in which evidence of other similar sexual conduct is recognized as having independent relevancy, and such evidence may be admissible whether that conduct involved the complaining witness or third parties. *State v. Martin, supra*. See, also, *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991) (evidence of defendant's sexual contacts with stepdaughter between ages four and five was admissible to show identity and absence of accident or mistake); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985) (evidence of other acts committed by defendant upon victim were relevant and admissible); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984) (evidence that defendant had sexually abused victim's sister was admissible); *State v. Baker*, 218 Neb. 207, 352 N.W.2d 894 (1984) (evidence that defendant attempted to pick up three other girls in same area in which he picked up victim was admissible); *State v. Evans*, 212 Neb. 476, 323 N.W.2d 106 (1982) (admitting testimony of sister corroborating incestuous assault of another daughter); and *State v. Hitt*, 207 Neb. 746, 301 N.W.2d 96 (1981) (evidence of defendant's sexual conduct with younger son was part of continuous pattern of conduct by defendant toward both sons, tending to establish motive, opportunity, intent, preparation, plan and knowledge).

Here, the evidence of the exposure and masturbation incidents provided context for Khalaf's state of mind in the period surrounding the first burglary, as the incidents occurred in the same timeframe. This evidence also related to the public indecency charge that was tried at the same time as both burglary charges (despite being dismissed before submission to the jury). As discussed further below, the district court did not err in denying Khalaf's motion to sever trial of the public indecency charge from trial of the burglary charges. The district court did not abuse its discretion in allowing the State to present evidence at trial of the two masturbation incidents.

## 2. DENIAL OF MOTION TO SEVER

Khalaf asserts that the district court erred in not severing trial on the public indecency count from the jury trial on the burglary counts. Khalaf argues that the underlying factual allegations in the public indecency count and the burglary counts "have nothing to do with each other" beyond the fact that the indecency charge stemmed from Khalaf's actions while under arrest for the burglary counts. Brief for appellant at 28. He argues further that it was "highly prejudicial" for the jury to "hear about sexualized behavior that . . . did not even rise to the level of misdemeanor behavior." Brief for appellant at 29.

There is no constitutional right to a separate trial. *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020). The joinder and severance of charges is governed by Neb. Rev. Stat. § 29-2002 (Reissue 2016), which provides in part:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

. . . .

(3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses in an indictment, information, or complaint or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

Whether offenses were properly joined involves a two-stage analysis: (1) whether the offenses were sufficiently related to be joinable and (2) whether the joinder was prejudicial to the defendant. *State v. Benson, supra.* There is a strong presumption against severing properly joined counts. *Id.* While § 29-2002 presents two separate questions, there is no error under either subsection (1) or (3) if joinder was not prejudicial, and a denial of a motion to sever will be reversed only if clear prejudice and an abuse of discretion are shown. *State v. Benson, supra.* An appellate court will find an abuse of discretion in the denial of a motion to sever only where the denial caused the defendant substantial prejudice amounting to a miscarriage of justice. *Id.*

To determine whether the charges joined for trial are of the same or similar character, an appellate court looks at the underlying factual allegations. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). Here, the underlying factual allegations of both burglary counts as well as the public indecency count involved Khalaf's actions over the course of several days in July 2020, during which he entered two residences without invitation, touching one resident without her consent and asking her sexually charged questions, sexually exposed himself and engaged in masturbation in the swimming pool area of an apartment complex where he did not reside, and upon his arrest on the burglary charges, also sexually exposed himself and engaged in masturbation in a police interview room. One of the burglary charges included allegations of his intent to commit the felony of first degree sexual assault. We conclude that the charges were "of the same or similar character" and joinable under § 29-2002(1).

Likewise, Khalaf has not shown that he was prejudiced by the joinder of the burglary and public indecency counts. A defendant opposing joinder of charges has the burden of proving prejudice. *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019). To prove prejudice in opposing joinder, a defendant must show compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever. *Id.* Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial. Joined charges do not usually result in prejudice if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020).

The evidence here was sufficiently simple and distinct for the jury to have easily separated evidence of the charges during deliberations, and due to the dismissal of the public indecency count by the district court, the jury did not end up deliberating on that count. As noted by the State, the evidence relating to each burglary count, Khalaf's subsequent arrest, and the public indecency count was presented through separate and distinct witnesses and exhibits with little overlap. Further, as we determined above, the evidence regarding Khalaf's public indecency charge was properly admissible in connection with the first burglary charge. Khalaf cannot show he was prejudiced by the denial of his motion to sever, and the court did not abuse its discretion in denying his motion. This assignment of error fails.

### 3. SUFFICIENCY OF EVIDENCE

Khalaf asserts that the evidence was insufficient to support his conviction on the burglary counts. He does not dispute that he willfully entered the real estate at the location of each burglary, but he argues that the evidence is insufficient to establish his intent for either burglary. Specifically, with respect to the first burglary, he argues that because he did not know who was present in C.L.'s residence when he entered, he could not have known who he would encounter, if anyone, and could not have had the intent to commit a sexual assault. And with respect to the second burglary count, he notes that there was no direct evidence that he opened the cupboard, was hungry, or was looking for food. He argues further that the only intent shown was that he intended to enter the residence to shelter from the rain and that there is no direct evidence that he entered Clinkenbeard's residence with the intent to steal anything.

"A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." § 28-507(1). And, the jury was instructed with respect to the first burglary count that the State had to prove Khalaf entered that victim's residence with the intent to commit first degree sexual assault. The jury instructions also defined first degree sexual assault, as well as "[s]exual penetration," "[w]ithout consent," "[f]orce or threat of force," and "[c]oercion." Neb. Rev. Stat. § 28-319(1) (Reissue 2016) provides that "[a]ny person who subjects another person to sexual penetration . . . without the consent of the victim . . . is guilty of sexual assault in the first degree." See, also, Neb. Rev. Stat. § 28-318 (Cum. Supp. 2020) (defining related terms). Intent sufficient to support a conviction for burglary may be inferred from the facts and circumstances surrounding an illegal entry. *State v. Nero*, 281 Neb. 680, 798 N.W.2d 597 (2011).

The evidence submitted in support of the first burglary shows that Khalaf willfully broke and entered into C.L.'s apartment, woke her while she was in bed, and asked for her help, which C.L. attempted to provide out of concern that he might become aggressive. While C.L. was sitting at her dining room table, attempting to provide the assistance requested by Khalaf, he massaged her shoulders without invitation, discussed their respective relationship statuses, asked her questions of a sexual nature, and again moved close to C.L., touching her leg with something she described as "fleshy" and that felt like the skin of a penis, although she was too scared to look at it. When she asked him to wait outside the apartment while she tried to provide further assistance, he asked her if she needed privacy and whether she was going to take a shower before complying with her request and leaving the apartment. The evidence shows that he was still outside the

- 11 -

apartment door when C.L.'s roommate returned. Viewing the evidence in the light most favorable to the prosecution, we determine that Khalaf's intent to commit first degree sexual assault could be inferred from the circumstances surrounding his entry and subsequent actions in the apartment. We determine that a rational trier of fact could have found the underlying felony element proved beyond a reasonable doubt.

The evidence as to the second burglary showed that Clinkenbeard's spare key was missing from a utility box outside the residence, that Khalaf entered through the front door, which had been locked, and that a cabinet containing Clinkenbeard's food had been opened before Clinkenbeard, who awoke to her bedroom light turning on and off again, discovered Khalaf's presence and demanded that he leave. Although there is no evidence that Khalaf actually took anything from inside Clinkenbeard's residence, burglary does not require an actual theft or asportation of property. *State v. Matz*, 226 Neb. 581, 412 N.W.2d 852 (1987). We find that, after viewing the evidence in the light most favorable to the State, a rational finder of fact could find, through the circumstantial evidence presented here, that Khalaf broke and entered Clinkenbeard's residence with the intent to steal her property.

#### 4. Ineffective Assistance of Counsel

Khalaf has different counsel on direct appeal than he did at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable

probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. John, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.*

### (a) Failure to Provide Discovery

Khalaf first asserts that his trial counsel was ineffective in failing to provide him with the discovery and investigative reports which prevented him from making an informed decision about whether to have a trial or to aid in his own defense. He argues that his attorney failed to request "discovery and investigative reports" until late in the case and did not provide them to Khalaf. He notes that his attorney did not file a motion for discovery until February 22, 2021. At the February 25 pretrial hearing, the prosecutor noted the pending discovery motion which had not yet been ruled on by the district court, and she expressed concern about "going forward" without full discovery having been provided. She did note, however, that she had been providing reports as she reviewed them, but she noted the existence of a police interview video of Khalaf that she had not yet been able to copy. In response to these concerns, Khalaf's attorney stated that he had received over 100 pages of police reports at that point, was prepared for trial on the original counts, and did not feel like he needed a copy of the referenced police interview video. In his brief on appeal, Khalaf argues that he "felt that he was in the dark" about what evidence the State intended to offer at trial and that there is no evidence in the record about whether his attorney "attempted to send those discovery documents" to him. Brief for appellant at 21.

Because it is not clear what materials the discovery consisted of, what communications Khalaf exchanged with his trial counsel, what discovery materials were or were not provided to Khalaf, and whether reviewing the discovery materials, including the police video, would have assisted Khalaf in deciding how to approach his case, we determine that the record on direct appeal is insufficient to address this claim of ineffective assistance of counsel. See *State v. Woodruff*, 30 Neb. App. 193, 965 N.W.2d 836 (2021).

### (b) Failure to Explain Possible Defenses

Next, Khalaf asserts that his trial counsel was ineffective in failing to explain what defense he could raise, and as such, he was unable to make an informed decision on whether to have a trial or to enter a plea to the charged offense. The State argues that the record is sufficient to refute this claim, noting that at the abandoned April 2021 plea hearing, Khalaf made it clear that he wished to proceed to trial rather than take a plea deal he did not like, stating then that his decision to proceed to trial was made voluntarily and in consultation with his attorney. The State also notes that during trial, Khalaf declined to testify on his own behalf and expressed no qualms about the decision at that time. However, because the record does not contain discussions between Khalaf and his trial counsel with respect to evidence, possible defenses, trial strategy, or plea acceptance, the record is not adequate for us to reach that claim of ineffective assistance on direct appeal.

(c) Failure to Prepare Defense, Depose or Call Witnesses

Finally, Khalaf asserts that his trial counsel was ineffective in failing to prepare a defense to the charge, in particular, to depose any witnesses including the victim prior to trial and to call any witnesses to counter such evidence. Whether trial counsel deposed the victim of either burglary, or why counsel chose not to, cannot be determined on our record. Accordingly, we find the record on direct appeal is insufficient to review this portion of Khalaf's claim. As to any uncalled witnesses, when the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.* It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id.* Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.*

Khalaf did not specify the names or descriptions of any uncalled witnesses in his assignment of error, but in his supporting argument, he specified that his counsel did not interview his niece or subpoena her to testify at trial. He argues that his niece was someone he asked C.L. to contact and that information about that communication and the circumstances surrounding it would have helped explain his reason for making contact with C.L. We cannot determine on direct appeal the nature of the niece's account and whether it would have actually supported Khalaf's innocence. Therefore, we cannot resolve this allegation of ineffective assistance on direct appeal, but this portion of Khalaf's claim is preserved for purposes of postconviction. However, it has not been preserved as to any other uncalled witnesses not identified by name or description in Khalaf's claim.

## VI. CONCLUSION

The court did not abuse its discretion in allowing the State to present evidence under § 27-404(2) at trial or in denying Khalaf's motion to sever trial on the public indecency count from trial on the burglary counts. The evidence was sufficient to support Khalaf's conviction on both of the burglary counts. And, as indicated above, Khalaf's claims of ineffective assistance of trial counsel have either not been sufficiently pled or the record is insufficient to review them on direct appeal.

AFFIRMED.